WIGGINS, RESPONDENT, *v.* INDUSTRIAL ACCIDENT BOARD, APPELLANT.

(No. 4,081.)

(Submitted November 10, 1917.    Decided January 11, 1918.)

[170 Pac. 9.]

*Workmen's Compensation — County Employees—Act of God— Death by Lightning—Judicial Notice.*

Workmen's Compensation—Burden of Proof.
  1.   He who claims compensation under the Workmen's Compensation Act (Laws 1915, Chap. 96) has the burden of establishing, by a preponderance of the evidence, that the injury or death resulted from (1) an industrial accident (2) arising out of and (3) in the course of the employment.

Same—Death by Lightning—Act of God.
  2.   The Workmen's Compensation Act (Laws 1915, Chap. 96), is sufficiently comprehensive to include death due to a stroke of lightning while deceased was doing county road work with a grader made of steel and iron.

Same—Accident "Arising Out of Employment"—Definition.
  3.   An injury to a workman arises "out of" his employment, within the meaning of the Compensation Act above, if it is the result of exposure to a hazard peculiar to the employment, or of exposure to

more than the normal risk to which the people of the community generally are subject.

[As to what is accident arising out of and in course of employment within the meaning of the Workmen's Compensation Act, see notes in **Ann. Cas. 1913C, 4; Ann. Cas. 1916B, 1293.**]

Same—Attractiveness of Metals for Lightning—Judicial Notice.

4. The natural attractiveness of metals for lightning is not one of the law of nature of which courts may take judicial. notice under section 7888, Revised Codes.

Same—Death by Lightning—Not Industrial Accident.

5. *Held,* that the death of a county employee who, while working on a road grader made of steel, was killed by lightning, did not result from an accident arising "out of" his employment, within the meaning of the Workmen's Compensation Act, since the hazard of being struck cannot be said to have been increased by the presence of the grader.

*Appeal from District Court, Big Horn County; Chas. A. Taylor, Judge.*

PROCEEDING under the Workmen's Compensation Act by Kate L. Wiggins for compensation for the death of Herbert L. Wiggins, deceased. From a judgment in favor of the claimant after rejection of the claim, the board appeals. Reversed and remanded.

*Mr. S. C. Ford,* Attorney General, and *Mr. R. L. Mitchell,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Mitchell* argued the cause orally.

"Even though there be an accident which occurred 'in the course of' the employment, if it did not arise 'out of the employment,' there can be no recovery; and even though there be an accident which arose 'out of the employment,' if it did not arise 'in the course of the employment,' there can be no recovery. (*Fitzgerald* v. *Clarke & Son,* [1908] 2 K. B. 796; *Craske* v. *Wigan,* [1909] 2 K. B. 635.)"

"The question whether or not an injury is an 'accident' within the purview of the Act is a mixed one of law and fact. (*Roper* v. *Greenwood,* [1900] 83 L. T. 471. When applied to ascertained facts, it is a question of law. (*Fenton* v. *Thornley & Co.,* [1903] App. Cas. 443, 19 T. L. R. 684.)" (*Bryant* v. *Fissell,* 84 N. J. L. 72, 86 Atl. 459, 3 N. C. C. A. 585.) There is no question but that the injury in this case happened in the course

of the employment.   But the contention of the appellant is that it is not an injury "arising out of the employment." (*Bryant* v. *Fissell, supra.*)   The only cases in this country which have passed upon the question of compensation for injury by lightning are the following: *Hoenig* v. *Industrial Commission*, 159 Wis. 646, L. R. A. 1916A, 339, 150 N. W. 996, 8 N. C. C. A. 192; *Klawinski* v. *Lake Shore & M. S. R. Co.*, 185 Mich. 643, L. R. A. 1916A, 342, 152 N. W. 213, and *State ex rel. People's Coal & I. Co.* v. *District Court*, 129 Minn. 502, L. R. A. 1916A, 344, 153 N. W. 119, 9 N. C. C. A. 129.

In the Wisconsin case the deceased was struck by lightning while at work on a dam and while performing services growing out of and incidental to his employment.   It had been raining and the rain was accompanied with thunder and lightning.   In this case the judgment of the court below denying compensation was affirmed.

In the Michigan case a section-hand on the railroad was struck by lightning while in a barn to which he had resorted while in the ordinary performance of his duty, by direction of his foreman, for refuge from a storm.   The supreme court held that "claimant's husband did not come to his death as the result of 'a personal injury arising out of and in the course of his employment,' within the meaning of the workmen's compensation law."

In the Minnesota case the deceased was employed as a driver on an ice route.   He drove an open wagon and his duties required him to work in all kinds of weather.   While on his usual route one morning, during a severe rainstorm accompanied by lightning, he left his team in the street and went toward a large elm tree standing just within the lot line, either for protection from the storm or on his way to solicit orders.   Just as he reached an iron fence along the lot lightning struck the tree and struck him.   The court held that the evidence was sufficient to sustain a finding that the accident was one "arising out of" his employment.

From a Washington case, that of *Stertz* v. *Industrial Ins. Commission*, 91 Wash. 588, 158 Pac. 256, it can be seen that the

supreme court of that state would allow compensation in a case like the present. But the Washington Act is very much different from our own.

Outside of this country there have been two cases before the courts of last resort involving the right to compensation for injury by lightning. In *Andrew* v. *Failsworth Industrial Society*, [1904] 2 K. B. 32, 90 L. T. (n. s.) 611, a bricklayer employed upon the construction of a building exceeding thirty feet in height was killed by lightning when working upon a scaffolding at a height of twenty-three feet from the ground. Evidence was given that a man working in that position incurred a risk substantially greater than the normal risk of being struck by lightning, and the county court judge found that the accident arose "out of" the employment. The appeal from the decision of the county court judge was dismissed, Lord Collins basing the decision of the court upon the finding of facts to the effect that the deceased employee incurred a peculiar risk greater than that which ordinary people run.

The second case, that of *Kelly* v. *Kerry County Council*, 42 Ir. L. T. 23, 1 B. W. C. C. 194, court of appeals, Ireland, decided in 1908, is directly in point with the case at bar. In this case a workman engaged on the road during a storm, whose duty was to clean out the gutters to prevent the water flooding the road, was struck dead by lightning. In a claim brought under the Act of 1906 by the widow it was held, supporting the decision of the county court judge of Kerry, that the death was not occasioned by accident arising out of the employment. (See, also, *Warner* v. *Couchman*, [1911] 1 K. B. 351, 4 B. W. C. C. 32; *Newman* v. *Newman*, 169 App. Div. 745, 155 N. Y. Supp. 665; s. c., 218 N. Y. 325, 113 N. E. 332.)

Lightning has always been considered as an act of God. (1 Corpus Juris, 1176.) It cannot possibly be said that lightning is a hazard inherent to the employment in which the deceased was engaged at the time of his death, and it would have been a physical impossibility for the employer in this case to provide for the protection and safety of his workmen against the hazard

of lightning.  To come within the purview of the Act, the risk must be one peculiarly incident to the employment, and not a risk incurred by everyone whether in the employment or not.  It is beyond dispute that lightning is a risk to which we are all subject, and it is not a risk inherent to this employment or peculiarly incident to the employment.  (*Craska* v. *Wigon,* [1909] 2 K. B. 635; *In re McNicol,* 215 Mass. 497, L. R. A. 1916A, 306, 102 N. E. 697, 4 N. C. C. A. 522; *Milliken* v. *Travellers' Ins. Co.,* 216 Mass. 293, L. R. A. 1916A, 337, 103 N. E. 898, 4 N. C. C. A. 512; *Federal Rubber Mfg. Co.* v. *Havolic,* 162 Wis. 341, 343, 156 N. W. 143; *Hopkins* v. *Michigan Sugar Co.,* 184 Mich. 87, L. R. A. 1916A, 310, 150 N. W. 325.)

*Mr. C. C. Quinn,* for Respondent, submitted a brief and argued the cause orally.

"Compensation Acts are based on a new theory of compensation distinct from the existing theory of damages" (*In re Kenney,* 222 Mass. 401, 111 N. E. 47; *In re Cripp,* 216 Mass. 586, Ann. Cas. 1915B, 828, 104 N. E. 565; *Andrejowski* v. *Wolverine Coal Co.,* 182 Mich. 298, Ann. Cas. 1916D, 724, 148 N. W. 684) ; "the underlying conception being one of insurance." (*Trim Joint District School* v. *Kelly,* [1914] App. Cas. 667, Ann. Cas. 1915A, 104, 7 B. W. C. C. 247.)

An injury arises out of the employment when there is apparent to the rational mind, upon a consideration of all the facts, a causal connection between the conditions in which the work is required to be performed and the resulting injury, if the injury can be seen to have been a natural incident of the work. (*In re McNicol,* 215 Mass. 497, L. R. A. 1916A, 307, 4 N. C. C. A. 522.)  " 'To arise out of the employment' the accident must result from a risk reasonably incident to the employment." (*State* v. *District Court,* 129 Minn. 502, L. R. A. 1916A, 344, 153 N. W. 119; *Parker* v. *Ship Black Rock,* [1915] App. Cas. 725, Ann. Cas. 1916B, 1300; *Melcher* v. *Freehold Investigation Co.,* 189 Mo. App. 170, 174 S. W. 455, 9 N. C. C. A. 65.)  "It has been said that an injury which occurs while an employee is

doing what he might reasonably do at the time and place is one which 'arises out of and in the course of his employment.' " (*Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 459, 3 N. C. C. A. 596; *Scott* v. *Payne Bros.*, 85 N. J. L. 446, 89 Atl. 927, 4 N. C. C. A. 682.) "An accident 'arises out of the employment' when it is some thing the risk of which might have been contemplated by a reasonable person when entering the employment incidental to it." (*Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 459, 3 N. C. C. A. 596.) "A risk is incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with it, owing to the special nature of the employment." (*Bryant* v. *Fissell, supra;* Elliott on Workmen's Compensation, 6th ed., p. 71.) "An injury, if it is a natural and necessary incident, or a consequence of the employment, although not foreseen or expected, arises out of it." (*Coronado Beach Co.* v. *Pillsbury*, 172 Cal. 682, 158 Pac. 212; *State* v. *Ramsey County District Court*, 129 Minn. 502, L. R. A. 1916A, 344, 153 N. W. 119, 9 N. C. C. A. 129.) "If the nature of the employment or the conditions under which it was pursued or the exposure to injury it entails, or the doing of something incidental to the employment was the proximate cause of the injury, it arises out of the employment. The proximate cause of the injury is not necessarily that which immediately arises out of the employment, but it may be that which is reasonably incident to it." (*Larke* v. *John Hancock Mut. L. Ins. Co.*, 90 Conn. 303, 97 Atl. 320, 12 N. C. C. A. 308.) "The expressions 'arising out of' and 'in the course of' the employment are not synonymous, but the words 'arising out of' are construed to refer to the origin or cause of the injury, and the words 'in the course of' refer to the time, place and circumstances under which it occurred.' " (*Hopkins* v. *Michigan Sugar Co.*, 184 Mich. 87, L. R. A. 1916A, 310, 150 N. W. 325.) "And the words are used conjunctively and not disjunctively. The former words must mean something different from the latter words. The workman must satisfy both the one and the other. The words 'out of' point to the origin or

cause of the accident, and the words 'in the course of' to the time, place and circumstances under which the accident takes place.    The former words are descriptive of the connection or quality of the accident, the latter relate to the circumstances under which an accident of that character or quality takes place.''    (*Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168, Ann. Cas. 1916A, 386, L. R. A. 1916A, 22, and note, 146 N. W. 665.)

''When a workman in the reasonable performance of his task sustains a physical injury as a result of the work he is engaged in, this is an accidental injury in the sense of the statute.    If such an occurrence as this cannot be described in ordinary language as an accident, I do not know how otherwise to describe it.''    (*Zappala* v. *Industrial Ins. Commission,* 82 Wash. 314, L. R. A. 1916A, 298, 144 Pac. 54.)    ''An accident is an unlooked for or untoward event which is not expected or designed.''    (*Bryant* v. *Fissell, supra.*)

''The American cases arising out of acts of this character sustain our conclusions that there is no distinction between an accident and a fortuitous event.''    (*Zappala* v. *Industrial Ins. Commission, supra.*)    ''It need not have been foreseen or expected, but after the event it must appear to have flowed from that source as a rational consequence.''    (*In re McNicol,* 215 Mass. 497, L. R. A. 1916A, 307, 102 N. E. 697, 4 N. C. C. A. 522.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On June 28, 1916, Herbert L. Wiggins, in the employ of Big Horn county, engaged in work upon the public roads, was killed by lightning.    His dependent mother presented to the Industrial Accident Board a claim for compensation, but the claim was rejected, and this action resulted.    The trial court rendered and entered judgment in favor of the claimant, and the board appealed.

Section 16 of the Workmen's Compensation Act (Laws 1915, Chap. 96), provides that the industrial accident fund is liable for the payment of compensation to an employee, or in case of his

death to his dependents, for "injury arising out of and in the course of his employment." The phrase quoted was incorporated in the English Compensation Act of an early date, and has been copied into the Act adopted by practically every one of the states of the Union which has a statute dealing with the subject. It has been construed frequently by the British and American courts, and the authorities agree that, to warrant payment of compensation, the facts must disclose that the injury or death, as the case may be, resulted from (a) an industrial accident, (b) arising out of and (c) in the course of the employment. In other words, it is held that these terms are employed conjunctively, and not disjunctively, and that the burden of [1] proof is upon the claimant to establish, by a preponderance of the evidence, that the three of these conditions are met. The authorities are too numerous to be cited. They will be found collected and reviewed in Ann. Cas. 1913C, p. 1, Ann. Cas. 1914B, p. 498, Ann. Cas. 1916B, p. 1293, and Ann. Cas. 1917C, p. 760.

It is conceded by the appellant board that the death of Wiggins resulted from injury received by him while in the due course of his employment. Our inquiry is thus limited to the principal question and to questions subsidiary to one of them:

1. Can it be said that the death of Wiggins resulted from an [2] industrial accident? We have heretofore indicated that the terms of our Act are sufficiently comprehensive to include injury resulting from an act of God, and we adhere to that doctrine and answer the first inquiry in the affirmative. (*Lewis and Clark County* v. *Industrial Accident Board,* 52 Mont. 6, L. R. A. 1916D, 628, 155 Pac. 268.)

2. Did the death of Wiggins result from injury arising "out [3] of" his employment? The words "out of" point to the origin or cause of the accident and are descriptive of the relation which the injury bears to the employment. Without attempting to formulate a rule which will include every injury within the meaning of this phrase, it is sufficient for the purposes of this appeal to say that if, by reason of the nature of the employment

itself or the particular conditions under which the employment
is pursued, the workman is exposed to a hazard peculiar to the
employment under the circumstances, and injury results by rea-
son of such exposure, then it may be said fairly that the injury
arises out of the employment, or, stated in different terms, the
workman must have been exposed by his employment to more
than the normal risk to which the people of the community gen-
erally are subject, in order that his injury can be said to
arise out of his employment. (Workmen's Compensation Acts;
A Corpus Juris Treatise, p. 77.)

It is not contended that there was anything in the nature
of the particular work upon which Wiggins was engaged that
exposed him to extrahazard, but it is insisted that the condi-
tions under which he was required to do his work at the time
of the accident exposed him to more than the natural risk of
being struck by lightning. He was required to work with a
metal road grader at a time a thunderstorm was threatening.
These facts appeared from an agreed statement. The trial court
reached the conclusion that the deceased had been exposed to an
abnormal risk, by a process indicated in an opinion expressed
at the time judgment was rendered, as follows: "In this case
we are of the opinion that we are justified in taking judicial
notice of the principle of the lightning-rod, the natural at-
tractiveness of metal, and especially of steel, for lightning, and
we hold that under the facts in this case the deceased was ex-
posed by reason of his employment about an iron and steel
road grader to unusual hazard from lightning; that such employ-
ment increased the natural hazard from lightning to which all
living creatures are exposed."

Assuming, without deciding, that in disposing of a case sub-
mitted upon an agreed statement of facts the court may sup-
plement the record by matters of which it may properly take
judicial notice, the question resolves itself into this: Was
the court justified in taking judicial notice of the natural
[4]  attractiveness of metals for lightning? Section 7888, Re-
vised Codes, enumerates the matters and things of which the

courts of this state may take judicial notice. The only provision of the statute which could possibly be invoked here is: "Courts take judicial notice of  *  *  *  the laws of nature."

In 15 R. C. L. 1127, it is said: "Judicial notice will be taken of scientific facts which are universally known, and which may be found in encyclopedias, dictionaries, or other publications, as well as of scientific methods and instruments, but they must be of such universal notoriety and so generally understood that they may be regarded as forming part of the common knowledge of every person. Here, as elsewhere, a judge may refresh his memory, if it is at fault, by resorting to any means for that purpose which he deems safe and proper. Examples of scientific matters of judicial cognizance are the laws of gravitation, the revolution of the earth, the change of the seasons, and the expansion of metals when heated and their contraction when cooled. The general nature and qualities of electricity and its manifold uses, the telephone, its nature, operation, and use, are likewise entitled to recognition under the same theory.  *  *  * However, cognizance may not be taken of scientific matters of uncertainty or dispute, or of insufficient notoriety, even though learnedly discussed in scientific publications."

Is it a known law of nature that metals, such as iron or steel, [5] possess properties which perceptibly attract lightning and enhance the danger from lightning within the sphere of their influence, and, if so, to what source of information may one resort to refresh his recollection and confirm him in his knowledge of the existence of the law? The trial court apparently treated the attractiveness of metals for lightning as the principle which underlies the use of the lightning-rod, or, stated differently, upon the assumption that the lighting-rod attracts the lightning, the iron and steel composing the road grader possessed the same property, and because of their attractiveness for the lightning, their enforced use by the deceased increased his risk beyond the normal limit.

As a result of scientific research covering a period of 150 years or more, certain fairly well-defined theories concerning the

action of lightning have been evolved. The discussion of them by scientists is elaborate and necessarily of a technical character. It would be impossible for us to reduce them to form available for presentation here, but an excellent summary of them is to be found in a brochure by H. H. Cochrane, a leading electrical engineer of this country, from which we quote the following:

"I may say that such laws [the laws governing the action of lightning] as exist are the same as those applying to other electric currents or discharges. Such laws, however, are exceedingly difficult to apply in the case of lightning, on account of the great number of unknown and unknowable variables which exist in any particular case. Certain atmospheric conditions cause the mist of vapor which forms clouds, to become charged with electricity. The potential of this charge tends to increase as the particles of moisture increase in size and decrease in number. When the potential becomes sufficiently high, the charged cloud will relieve itself by discharging either to another cloud of lower potential, or to the earth. It is the latter kind of lightning only in which we are interested.

"The character of such a discharge to earth depends upon the size of the cloud, its distance from the earth, the potential to which it is charged, the quantity of the charge, and the character of the path through the atmosphere in which the discharge takes place. The discharge may be oscillatory, with a frequency varying from a few thousand cycles per second up to several million cycles per second, or it may be a single direct stroke, with a current flowing in one direction only. In the latter case the impulse or wave of current will ordinarily have such a steep wave front that its characteristics will largely resemble those of the high frequency oscillatory discharge.

"When the atmosphere in the path of the discharge is variable in its characteristics, in other words, if the stroke passes successively through atmospheric strata of high and low temperature, and of varying degrees of moisture, the potential gradient will be correspondingly variable, so that the breakdown of the atmosphere will occur by a step by step process. The potential

gradient in the atmosphere in close proximity to the cloud may be sufficiently high to cause this part of the atmosphere to break down as a preliminary step.   The potential of the cloud, having now advanced to a new point, will stress the atmosphere adjacent to the new point sufficient to cause another advance in the break-down, and so the stroke will progress from point to point, until it finally reaches the earth, the action being similar to that of a quantity of water released on the top of a hill, which starts a small stream downward in the most available path, which stream turns from side to side in its course down the hill, always taking the easiest path, until it reaches the bottom.

"This, I believe, is the most usual form of lightning stroke. A rarer form occurs when the atmosphere is practically uniform in character between a broad, flat cloud and the earth.   In this case the potential gradient between the cloud and the earth will be more nearly uniform, and no discharge will occur until the atmosphere throughout the entire course of the stroke is stressed to the breakdown point.   The voltage required for this kind of a stroke is very much higher than that required for the class of stroke first described, and the severity of the stroke is correspondingly greater.

"If the earth were perfectly flat and uniform, the points at which lightning would strike would be determined entirely by the location of the charged clouds and the characteristics of the atmosphere intervening between the clouds and the earth.   In general, the lightning would start from the lowest point on the charged cloud, and would follow the path of least resistance through the atmosphere to the earth.   Where the earth is not uniform, due to either variable contour, or the existence of buildings, trees, poles, or other projections from the surface, or due to regions of good conductivity, caused by moisture, as com- pared with regions of poor conductivity, caused by dry sand or rock, the course of the lightning to the earth will be somewhat modified by these irregularities.   This follows from the fact that the lightning always tends to take the path of least resistance.

"In all ordinary cases, however, the location and configuration of the storm clouds, and the more or less variable conductivity of the atmosphere, are by all means the predominating factors in determining where the lightning will strike, and all ordinary, natural, or artificial projections from the earth's surface are of comparatively small importance."

We may assume for present purposes that a lightning-rod properly adjusted to a building furnishes some protection against damage from lightning; but, so far as our research has gone, there appears to be no difference of opinion among the authorities that the lightning-rod is not employed because it attracts the lightning. From the articles in the standard encyclopedias and from the work of Sir Oliver Lodge, entitled "Lightning Conductors and Lightning Guards," we deduce the following: The lightning-rod projecting above the building which it is intended to protect may be the object upon which the atmospheric breakdown occurs, and, being a good conductor of electricity, it will ordinarily conduct the discharge safely into the ground and relieve the building itself from danger. When electricity passes through a poor conductor, it generates intense heat. If there is no lightning-rod attached to a building, and the breakdown occurs at some projecting portion of the building, the heat generated by the passage of electricity through the building—a poor conductor—may, and usually does, cause damage. The atmospheric breakdown occurs at the weakest point—the place of maximum tension. If there are numerous projecting objects, such as lightning-rods, trees, *etc.,* the brushes and glows become so numerous that the tension may be relieved and the entire discharge dissipated without violence or damage, and primarily this is the purpose which the lightning-rod is to subserve. But if the charged cloud descends too quickly or has too great a store of energy, the crash occurs notwithstanding the projecting points, and the service of the lightning-rod is then employed to conduct the discharge into the ground. Because projecting objects may occasion the atmospheric breakdown, trees, tall buildings and other projecting objects are more likely

to be struck by lightning than other less prominent objects, and it is upon this theory, we think, that compensation for injury from lightning was allowed in *State* v. *Ramsey County Dist. Court,* 129 Minn. 502, L. R. A. 1916A, 344, 9 C. C. A. 129, 153 N. W. 119, and in *Andrew* v. *Failsworth Industrial Soc.,* [1904] 2 K. B. 32, and denied in *Klawinski* v. *Lake Shore etc. R. Co.,* 185 Mich. 643, L. R. A. 1916A, 342, 152 N. W. 213, in *Hoenig* v. *Industrial Com.,* 159 Wis. 646, L. R. A. 1916A, 339, 150 N. W. 996, and in *Kelly* v. *Kerry County Council,* 42 Ir. L. T. 23, 1 B. W. C. C. 194. The decisions are harmonious. The difference in the facts alone accounts for the contrary results.

The most diligent research on our part has failed to disclose any authority which supports the theory upon which this cause was decided by the court below; on the contrary, so far as they point to any conclusion respecting the subject, the authorities indicate quite clearly that the presence of the metal road grader could not have had any perceptible influence upon the lightning, and did not tend to increase the natural hazard of the deceased's employment. For this reason it cannot be said from this record that his death resulted from an accident arising out of his employment, as the term is used in our Workmen's Compensation Act.

The judgment is reversed and the cause is remanded to the district court, with directions to enter judgment for the defendant board.

*Reversed and remanded.*

MR. JUSTICE SANNER concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, takes no part in the foregoing decision.

Rehearing denied February 11, 1918.