(No. 15403.—Judgment reversed.)

THE ALZINA CONSTRUCTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MARY F. KELLY, Defendant in Error.)

*Opinion filed October 20, 1923.*

1. WORKMEN'S COMPENSATION—*when claimant must prove risk was peculiar to the employment.* A claimant for compensation for an injury or death due to the action of the elements or any other cause to which the public generally is exposed, has the burden of proving that the risk was peculiar to the employment and that the position of the injured person was more hazardous than that of others in the same community, or that the work or the method of doing it exposed the employee to the forces of nature to a greater extent than he would be exposed if not so engaged.

2. SAME—*when a claimant is not entitled to compensation for death by lightning.* A dependent is not entitled to compensation for death of an employee by lightning where the evidence does not show any causal connection between the accident and the work of unloading cement, in which the employee was engaged at the time he was struck, or that the place of employment exposed him more to the risk of being struck by lightning than a person in any other employment in the locality.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

POPE & DRIEMEYER, for plaintiff in error.

ANDRUS, TRUTTER & CROW, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

An application for adjustment of claim was filed with the Industrial Commission by Mary F. Kelly, the mother of John F. Kelly, because of his death by lightning while in the employ of plaintiff in error at its cement house near Auburn, Illinois, on June 20, 1921. After a hearing before the arbitrator compensation was awarded, and after some additional testimony was heard by the Industrial Commis-

sion the finding of the arbitrator was affirmed, and the latter's decision having been sustained by the circuit court the case has been brought here by writ of error.

The time, place and nature of the accident are admitted, and also that there was notice and claim made within the statutory period. The questions in dispute are whether the accident arose out of and in the course of the employment, and, if compensable, the amount that should be paid, and the dependency of the mother.

The plaintiff in error in the conduct of its business maintained at the place of the accident a wooden one-room cement house about 100 feet long by 30 feet wide and 20 feet high, extending east and west about 30 feet from a switch-track and about 50 feet from the main tracks of the Illinois Traction System, which were to the south. About 125 feet in the same direction were four or five houses about 25 or 30 feet apart. On the switch-tracks were some filled and some empty cars. On the north side of the cement house was a narrow-gauge railroad, the rails being laid on steel ties, and beyond that, in the same direction, was an open field. On the west was a tunnel and sand-pit but no buildings or trees. On the east was the office of the construction company, and there was also a dwelling house in that direction about 250 feet distant from the cement house. There were four doors on both the north and south sides of the cement building, and at least two of these doors on each side were open. Box-cars of cement at the time of the accident had been brought up to the cement house to be unloaded, and, as it had commenced to rain, sacks of cement were being wheeled into the building on trucks which had steel wheels and braces but wooden handles. The lightning struck Kelly just as he was finishing taking in some cement at the second door from the south end of the building. Another man, Stephen Ferns, who was inside the shed, was also struck and killed, and two other men were affected by the lightning, but there was no damage done to the building itself.

On review, Clarence Root, meteorologist in charge of the weather bureau at Springfield, testified as a witness, and was asked a hypothetical question purporting to embody the essential physical conditions surrounding the scene of the accident. He was asked whether or not in his opinion a man under those conditions, by reason of his employment at the time, was exposed to a greater risk of being injured than were the public in that community or if his employment necessarily accentuated the natural hazard. Over objection this witness answered that because of his work and the location of the same he was exposed to a greater risk than others in the community, because of the isolation of the place. Further examination of the witness disclosed that while in the performance of his duties he had tabulated various reports and made a record of deaths and damage by lightning he had not attempted to classify hazard by lightning under varying conditions; that his study had not been as to the accentuation of hazard by reason of a person's being in one place or another, but had been more particularly with reference to the number of people killed by lightning in a given time within a given area. From the witness' whole testimony the fair conclusion is that it tended to prove that a person would be exposed to about an equal risk of being struck by lightning in any one of a number of buildings near together, except that a higher building would have a greater exposure and risk. In the last analysis the witness concluded the line was to be drawn between populated communities and rural communities and between collected buildings and isolated structures; that there was no greater hazard at the cement house than at a house standing alone. The witness did not think the steel tracks and ties and the use of steel at the cement house created any additional risk.

While the laws of the different States vary as to accidents caused by the action of the elements, the same general principles and the same general tests should be applied

to such accidents in this as in other jurisdictions. It is the general rule that the circumstances in a particular vocation, in order for an employee to claim the benefits of the Workmen's Compensation act, must be appreciably and substantially beyond the ordinary risk, so that there is extra danger. to which employees in ordinary occupations or places of employment are not subject; that the decision of such a question cannot depend upon inference arrived at by conjecture or speculation; that the burden of proof is upon the applicant to show that the position of the injured person was more hazardous than that of others in the same community or that by reason of the employment the risk was greater. (*Central Illinois Service Co.* v. *Industrial Com.* 291 Ill. 256; *City of Joliet* v. *Industrial Com.* 291 id. 555.) Whether a death caused by lightning should be compensated for would therefore depend upon the circumstances. There are numerous cases where the action of the elements was the direct cause of death, such as tornadoes, lightning and sunstroke, and while these are risks common to all persons, in a general sense the circumstances of a particular employment may "make the risk not the general risk but the risk sufficiently exceptional to justify its being held that an accident from such risk was an accident arising out of the employment." (*Central Illinois Service Co.* v. *Industrial Com. supra,* on p. 262.) A reference to various decisions in other jurisdictions will show that the conclusions of the courts do not vary materially from the holdings of this court already decided.

In *Andrew* v. *Failsworth Industrial Society,* L. R. 2 K. B. (1904) 32, a bricklayer employed upon the construction of a building exceeding 30 feet in height was struck by lightning while working upon a scaffolding 23 feet from the ground. It was held that the risk in that position was substantially greater than the normal risk and that the accident arose out of the employment.

In *Atlantic Coast Line Railroad Co.* v. *Newton,* 118 Va. 222, an action for damages was sustained against the company for maintaining a telephone line equipped with lightning arresters some of which were defective. A bolt of lightning struck the wire and injured the plaintiff while in the discharge of his duties as an operator. The company could reasonably have anticipated the danger from lightning coming in contact with its wires, and it was held to be its duty to provide and maintain arresters in a proper state of efficiency.

In *DeLuca* v. *Park Comrs.* 94 Conn. 7, it was held that an employee of the city of Hartford, who while at work raking leaves in one of the public parks sought temporary shelter under a tree during a storm and was struck by lightning, was subjected to a greater danger of being struck by lightning than he would have been in a house and the danger was greater to him than to persons generally in that locality.

In *State* v. *District Court of Ramsey County,* 129 Minn. 502, a driver of an open ice wagon who was required to follow a fixed route without regard to weather conditions, left his wagon during a severe storm and went under a tree and was struck by lightning. It was held that the risk to which the driver was subjected was under the circumstances greater than the risk to the public in that vicinity.

In *State Road Com.* v. *Industrial Com.* 56 Utah, 252, it was held that an employee working on a State road, who was struck by lightning while seeking shelter, came within the act of that State, which only required that the accident arise in the course of the employment.

These cases are illustrations of risks only indirectly connected with the employment but which under the laws of the various jurisdictions were held compensable. Under other circumstances it was held in the following cases that the employer was not liable:

In *Thier* v. *Widdifield,* 210 Mich. 355, it was held that a workman struck by lightning while standing in the doorway of his employer's barn, which was about 25 feet from an ice house and 75 feet from his dwelling house but connected with the latter by an insulated wire, was not subject to an exceptional risk while waiting there for the storm to subside.

In *Hoenig* v. *Industrial Com.* 159 Wis. 646, an employee was killed by lightning while working on a dam in a river. It was held that he was not exposed to a hazard from lightning peculiar to the industry or differing substantially from the hazard from lightning in any outdoor work.

In *Wiggins* v. *Industrial Accident Board,* 54 Mont. 335, it was held that the death of a county employee, who while working on a road-grader made of steel was killed by lightning, did not result from an accident arising out of his employment within the meaning of the act of that State, since the hazard of being struck could not be said to have been increased by the presence of the grader, which apparently was the only object relied upon as exposing deceased to more than a natural risk.

In *Griffith* v. *Cole Bros.* 183 Iowa, 415, an employee was killed while sitting in a tent in a place where the ground was saturated with water. There was no floor in the tent and there were no lightning rods or arresters, and the tent was higher than surrounding objects. Near the tent was a wire fence and also a pile of steel rods. It was not shown in what direction or manner the lightning came into the tent. The court held that while it was shown that metal and wet ground were conductors of electricity, there was no causal connection shown between the conditions which existed and the resulting injury.

In *Kelly* v. *Kerry County Council,* 1 B. W. C. C. 194, the deceased during a heavy storm was working in a road

with a shovel, freeing outlets and gullys from matter that tended to choke them, and while so engaged was killed by lightning.   It was held that this employment created no risk from lightning differing from that of one working in a field or garden.

The general rule in all these cases would seem to be that the employer cannot ordinarily be held liable to pay compensation for injury caused by forces of nature which he cannot reasonably foresee and guard against, where the employee is no more subject to injury from such forces than others, but that the employer is liable where the work or method of doing it exposes the employee to the forces of nature to a greater extent than he would be exposed if not so engaged or to a greater extent than others in the community are exposed.   (1 Honnold on Workmen's Compensation, secs. 117, 119; Bradbury on Workmen's Compensation,—3d ed.—660, 661; Corpus Juris, Workmen's Compensation Acts, 77.)   .

Without question, scientific data and statistics are proper to be taken into consideration in a case of this kind, but as was said in *Wiggins* v. *Industrial Accident Board, supra,* the laws governing the action of lightning are difficult to apply "on account of the great number of unknown and unknowable variables which exist in any particular case." The witness in this case who was called to testify because of his knowledge of meteorological conditions and laws, stated that "as a matter of fact the pranks are so queer that one is unable to classify the risks or hazards which are caused by lightning," and as we have heretofore stated, there was no attempt by him or any other witness to make a classification, except in a general way as between rural communities and urban communities, or between collected structures and isolated structures, or as to a building rising higher than others around it.   The only witness who testified as to the probabilities, stated that in his opinion the lone house 250 feet distant from the cement building

would be slightly more liable to be struck than would the group of structures in the locality and the hazard at the cement house would be slightly greater than at the group, and that if it were higher than the others that would increase the hazard slightly, and that while the difference would not be great it would not be negligible; that he did not think the greater size of the building important.

From the evidence in the record, in view of the various rules of law that are laid down in this and other jurisdictions as to the hazard of being struck by lightning or suffering other injury by the action of the elements, we do not think that the cement house was of such an outstanding character, or that the circumstances connected with the accident were of such a nature, as to justify the holding that the accident arose out of Kelly's employment. There were a number of other buildings not far from the cement house, and the cement house was only 20 feet high. It was not shown that the building itself was struck. One witness testified the lightning "went all around the building," but there was no evidence of any damage. The testimony in the record also negatived the conclusion that there was any tendency of the steel or metal in or around the building or the trucks to have had any influence in conducting the lightning to where the employee was working. We do not think the evidence in the record showed any causal connection between the accident and the work in which the employee was engaged at the time, or that the place of employment exposed him more to the risk of being struck by lightning than any person in any other employment in that locality.

In view of our conclusion that there is no liability, there is no necessity to discuss the question of the amount of the award or the dependency of the mother.

The judgment of the circuit court will be reversed.

*Judgment reversed.*