MRS. FLORENCE STONE, DEPENDENT OF EVERETT STONE, DECEASED, RESPONDENT, v. BLACKMER & POST PIPE COMPANY (EMPLOYER), AND T. H. MASTIN & CO. (INSURER), APPELLANTS.*—27 S. W. (2d) 459.

St. Louis Court of Appeals. Opinion filed May 6, 1930.

*Corpus Juris-Cyc. References: Workmen's Compensation Acts, —CJ, section 5, p. 9, n. 38; section 34, p. 41, n. 97; section 63, p. 72, n. 69; p. 73, n. 76; section 65, p. 74, n. 87; section 112, p. 115, n. 24; section 127, p. 122, n. 40.

*Fordyce, Holliday & White* for appellants.

*Lorts & Breuer* for respondent.

H'AID, P. J.—This is an appeal from the judgment of the circuit court reversing an order of the Workmen's Compensation Commission denying an award to the widow of an employee who was killed

by the falling of a brick smokestack which was blown down by a tornado.

On the afternoon of September 29, 1927, about one o'clock, a tornado occurred in the city of St. Louis which swept in a general direction from the southwest part of the city to the northeast. In its course it did considerable damage, injuring several hundred people and caused the loss of some seventy-three lives. The tornado started at a point a short distance south of the Blackmer & Post Pipe Company, the employer in this case. Everett Stone was an employee of that company and had been in its employ for more than a year prior to September 29, 1927. The company was engaged in the manufacture of clay products, such as sewer pipes, drain pipes, and other similar products. There were three furnaces in use by the company, located in a building of the company, the furnaces being placed side by side, and they were equipped in the usual manner, with a high stack—being a brick chimney approximately eighty-five feet high; the building, itself, was approximately twenty-four feet high, and the smokestack extended some thirty feet above the highest point of the roof of the building. The deceased was an assistant fireman, his duty being to fire the furnaces and in the performance of his duty the deceased was required to stand in front of the furnaces, in order to shovel coal into them, and his position in the performance of such duties required that he stand in close proximity to the smokestack, where he was standing when he was struck by the falling stack and buried beneath some two feet of debris, consisting chiefly of the brick and mortar composing the smokestack; it further appeared that, as a result of the falling smokestack, a number of iron pipes at the front of the boiler and furnaces were broken, and, in consequence thereof, large quantities of steam and boiling water poured out and upon the bricks and mortar where Stone, the deceased, lay buried, so that when the body of the deceased was removed, within probably an hour after the falling down of the stack, his body was scalded and burnt almost beyond recognition.

The findings of fact of the Commission are that—

"The employee was killed by falling brick, caused by the collapse of a brick smokestack. The cyclone was the cause of the stack collapsing. This act of God was the direct cause of the employee's death. While it may be true that by reason of the high smokestack and the high-pressure-steam boiler, the place where the employee was working was more hazardous, there was nothing about either the smokestack, the boiler or the other surroundings that attracted lightning."

but the Commission was divided in opinion as to the application of the law and the denial of an award was, therefore, by a majority of the Commission.

The finding that the employee was killed by the falling brick is supported by the evidence and seems to admit of no doubt, and

therefore, like the finding of a jury is conclusive (State ex rel. v. Missouri Comp. Comm. (Mo.), 8 S. W. (2d) l. c. 899; Hager v. Pulitzer Pub. Co. (Mo. App.), 17 S. W. (2d) 579; Woods v. American Coal & Ice Co. (Mo. App.), 25 S. W. (2d) 144), so that the question is whether, under the act, the employer is to be charged with a death benefit under such circumstances.

Section 7 (b) of our act (Laws 1927, page 495) provides, among other things, that:

"The word 'accident' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom."

It can hardly admit of doubt that the death of the employee was the result of an accident (Drecksmith v. Universal Carloading & Dist. Co. (Mo. App.), 18 S. W. (2d) l. c. 87), but an accident, to be a compensable one, must arise both in the course of the employment and out of such employment (Smith v. Levis-Zukoski Merc. Co. (Mo. App.), 14 S. W. (2d) l. c. 472; Hager v. Pulitzer Pub. Co. (Mo. App.), 17 S. W. (2d) l. c. 580), because "a mere showing that the employee was injured by accident occurring on the premises of his employer, at or near the regular place of service, does not serve to establish liability under the act. In other words, the fact that the employee was on the premises during his regular working hours, and was injured, will of itself form no basis for the presumption that the accident arose out of and in the course of his employment." [Smith v. Levis-Zukoski Merc. Co. (Mo. App.), 14 S. W. (2d) l. c. 473.]

An accident, therefore, which results in the course of the employment may also be said, we think, to arise out of such employment when it results as an incident to the character of the business which is being carried on. On the other hand if such accident is the result of a hazard unconnected with the prosecution of the work in hand, then there is a lack of that causal connection which would bring it within the terms of the act. We think there can be no question that this is the intent and meaning of the compensation act of our State, as well as those of other states, as seems evident from a consideration of the reasons for the adoption of those statutes. The purpose of all such acts was to place, as an expense of operation of a business, the loss of efficiency in the usefulness of its employees occasioned by accidents arising as an incident to the conduct of such business just as other costs of operation are chargeable, but such laws were not intended to insure employees against accidents that do not so arise.

While it is true that our act commands that it shall be liberally construed with a view to the public welfare (sec. 76, Laws 1927, page 522), that does not authorize the allowance of a claim that lacks some of the essential elements required by the act.

In the present instance the death resulted from a cause wholly disconnected with the operation of the business, in fact, from a condition which arose entirely outside of the conduct of that business. It is true that the deceased happened to be in a place that exposed him to injury from the falling smokestack, but that fact alone cannot avoid the necessity of a showing that the injury resulted from a cause connected with or growing out of the conduct of the business. It is obvious, we think, that the fact that deceased was in this particular building, which was one of many that were damaged by the tornado, cannot be held to have subjected him to a greater hazard than others who were in the path of the tornado. Many people were injured or killed by the tornado, as the record shows, who were in other places, and, as is usual in tornadoes, many buildings and smokestacks in the path of the storm, were uninjured. Nor does the mere fact that the smokestack was there, exposed to the elements, furnish the causal connection which would sustain a finding against the employer. To so hold would amount to stating that because the business of an employer is located in a building adjacent to a sound but much higher one, he would be held to compensation if a tornado should precipitate a part of the taller building upon his place and injure his employees.

In the case of Mobile & Ohio Railroad Co. v. Industrial Commission of Illinois, 28 Fed. Rep. (2d) 228, there was involved the question whether the employer was liable to make compensation for an employee who was killed in the collapse of a building due to a tornado at Murphysboro, Illinois. The court said, "that there is no evidence in the record that will warrant a finding that the industry caused this injury, or that it accentuated the risk of the deceased over that of the public" and that "there is no evidence that the nature of the employment was one that forced the employee to be especially subject to the dangers of certain acts of God" and held that since there was no causal relation between the injury and the employment there could be no award of a benefit.

The case of Central Illinois Public Service Co. v. Industrial Commission et al., 291 Ill. 256, 126 N. E. 144, 13 A. L. R. 967, was a case in which, due to a cyclone, the buildings of the employer were badly damaged. The employee was in the engine room when one of the walls collapsed and when discovered was found standing up completely surrounded by bricks which had fallen. The force of the storm broke the coils attached to the ammonia tank and the steam pipes connecting the boiler and the ice machine at the point of connection with the ice machine. The ammonia fumes were so strong

that the parties attempting to rescue the employee found it impossible to carry on their work more than a moment or two at a time. It was found that his body was severely scalded by escaping steam; that one side of his body was severely burned, from which injuries death resulted. The court, after considering a large number of American and English cases, concluded its opinion in the following language:

"While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk, and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment. In the instant case, while the risk of being injured by this cyclone may be said to have been a risk common to the public in the vicinity of such cyclone, regardless of employment, yet if there was, in the circumstances of Kilgore's employment, an unusual risk or danger of injury from the destruction by storm of the building in which he was employed, such risk may be said to be incident to the employment of the deceased, and the injury received to arise out of such employment. Deceased at the time the storm broke was engaged in assisting and directing the closing up of the plant of defendant in error. These duties took him among the steam pipes and ammonia coils, which subjected him to an unusual risk of being injured from escaping steam and ammonia fumes, should the building be destroyed by storm. The evidence shows that the ammonia fumes and scalding steam contributed most largely to the injuries which caused his death. We are therefore of the opinion that there were in the circumstances of the employment of the deceased risks of being injured by the storm not common to the public in that vicinity, and the circuit court therefore erred in setting aside the award."

In the case of Slanina v. Industrial Commission of Ohio, 158 N. E. 829, the employee was injured as the result of a telephone pole being blown in a tornado against an automobile in which the employee was riding while in the course of his employment for his employer. It appeared that the employer was engaged in the furniture business and delivered purchased articles to the homes of its customers. At the time of the accident the employee was operating a delivery truck and he was required to make deliveries without regard to weather conditons. He had taken a carpet from the delivery truck and was delivering it to one of the customers when the tornado blew the telephone pole against the automobile injuring him. Under the construction placed upon the Ohio Compensation Act, recovery cannot be had except for injuries received in the course of and arising out of the employment.

In passing upon the question as to the right to compensation, the court said,

"A tornado is one of the forces of nature which man cannot foresee and prevent, and an employee is ordinarily no more subject to injury from such source than are others; the nature of the employment not subjecting him to any more peculiar risk than any other member of the public might have been subjected to if he had been at the same place at the same time that the accident occurred. In other words, risks to which all persons similarly situated are equally exposed, whether in the employment or not, and not traceable in some special degree to the particular employment, are such as are not compensable under the statutes of this State. The fact that the injury was caused by the act of God does not, however, necessarily deprive the injured party of the right to recover under the Workmen's Compensation Act, if the employee's duties exposed him to some special danger not common to the public.

"The record indicates that Slanina's injuries were due to a risk common to the public generally, and not increased by the circumstances of the employment, and would not therefore be compensable within the act."

The cases above referred to review many of the authorities concerning the right to recover for injuries due to the elements and, therefore, it is unnecessary to extend this opinion by reviewing those cases here.

The death of the employee in the instant case was due to the force of the tornado and was not peculiar to the employment that he was engaged in, so that while his death was occasioned in the course of his employment, it did not arise out of it and, therefore, there can be no recovery under our Act.

The result is that the judgment of the circuit court should be reversed. It is so ordered.

*Becker* and *Nipper, JJ.,* concur.