# MARCH, 1939.

Mrs. Beulah Felden et al., Dependants of Joseph L. Felden, Deceased, Respondents, v. Horton & Coleman, Inc., a Corporation, Employer, and the Fidelity and Casualty Company of New York, a Corporation, Insurer, Appellants.—135 S. W. (2d) 1115.

Springfield Court of Appeals.  August 10, 1939.

Rehearing Denied.  September 13, 1939.

*George A. Hodman* and *Robert S. Lindsey* for appellants.

*Eugene M. Munger* for respondents.

FULBRIGHT, J.—Claim was made for compensation as provided in the Missouri Workmen's Compensation Law for death of Joseph L. Felden by lightning. As a defense the employer and insurer asserted that the death was due to an act of God and not to injury arising out of and in the course of his employment. The Referee and the full Commission found that the employee met his death as the result of an electrical storm, but denied compensation for the reason that his employment did not subject him to any extra hazard from said condition. Claimants appealed to the circuit court which found that ''the Commission erred in its conclusion of law that the deceased was not subjected to greater hazard by reason of his employment.'' From the judgment of the circuit court reversing the commission the employer and insurer appealed to this court.

The evidence at the hearing showed that on and prior to the day of his death Mr. Felden had been in the employment of Horton & Coleman, Inc., who were engaged in repairing a levee on the Mississippi River which had been broken by a flood. At the break the water was pumped back into the river by a gasoline engine operated by Mr. Felden. The engine and pump were on the river side of the levee, and on the land side were three small wooden shacks, two of which served as living quarters for the engineers in charge of the work, and the third as storage place for tools and materials. Shortly before three o'clock on June 27, 1937, a hot day, there was a light shower followed by sunshine. About 3 o'clock Mrs. Berry, wife of one of the engineers on the work, walked along the levee toward the place where the drag line machines were in operation to met her husband who came off duty at that time. She saw deceased sitting on a wooden box on the crown of the levee, facing the drag line machines which were about one thousand feet away. As she approached deceased she noticed that another storm was coming. He spoke to her, saying that it looked like a storm. Mrs. Berry returned to her shack and the storm broke. The rain was heavy and the lightning flashed, a particularly severe flash occurring about 3:25 or 3:30 o'clock. About 5:30 o'clock Mr. Felden's body was discovered by one of the engineers. It lay on the river side of the levee seven to fifteen feet from the wooden box on which Mr. Felden had been seated when Mrs. Berry saw him. The head lay toward the river, the feet lay a few feet below the crown of the levee. On the crown of the levee and within six or seven feet of the feet of the deceased, was a five gallon can of gasoline without a cap, and nearly full of gasoline. ''Kind of

laying on his hand" was a steel wrench. A few scratches were on the face and blood was in one, or possibly both, of the ears. The coroner testified that there was something that looked like a bruise on one foot, but that there was no evidence of burns. The left shoe showed a separation between the sole and upper on the inner side, and his hat had a hole in it, but these conditions are not definitely linked with the lightning.

The distance from the pump to the small structures above referred to was about 600 to 700 feet, and the pump was about the same distance from the place where Mr. Felden's body was found. His parked automobile was from 35 to 125 feet from the place where his body was found, the distance being variously estimated by the several witnesses. From the nearest of the three shacks to the body it was about 150 feet, and to the one farthest away where Mr. and Mrs. Berry lived, it was about 250 feet along the line of the levee. On the land side of the levee, probably about 60 to 70 feet from the tool storage shack were some drums of gasoline which furnished the fuel for the engine. Somewhere near the gasoline drums there may have been a spool or two of new steel cable, and a discarded, broken unattached steel cable about 150 feet long lay along the river side of the levee and extended over the top to the land side. It had been there for some time and was more or less covered with dirt and lay in or upon the earth. The body of Mr. Felden was found about thirty-five feet from the nearest position of this old cable.

The levee on the land side was about seventeen feet high. The crown had originally been about eight feet in width, but rain had leveled it off somewhat. The levee was covered with weeds, some as high as six feet. On the river side along the liver at this point was a wide stretch of sand from 100 to 150 feet wide, extending to within a few feet of the top of the levee which had to be crossed to get to the pump. On the river side of this sandy level were willows and cottonwoods, some of which were 40 to 45 feet high. Beyond these trees was the pump, and still farther out was the Mississippi River.

Appellants' contention is that the circuit court erred "in reversing the final review award of the Workmen's Compensation Commission. The finding of the Referee, affirmed unanimously by the Commission upon review, was that upon the evidence the employment of deceased did not subject him to any extra hazard. This finding was correct since the evidence adduced on the point, supported the award by an adequate, legal sufficiency. So supported, the award of the Commission had all the force and validity of a special verdict, and the circuit court erroneously set it aside, contrary to the provisions of the act, particularly section 3342, Revised Statutes of Missouri, 1929."

Our act provides compensation for injuries by accident "arising out of and in the course of" the employment. Death by lightning,

under certain conditions, may be an accident arising out of the employment, although it falls within the definition of "an act of God." As was said in the case of Netherton v. Lightning Delivery Co. (Ariz.), 258 Pac. 306, in which lightning had caused death of an employee, "Each case must therefore be considered on its own facts. But the standard for testing these facts is always the same, to-wit, Did the employment increase the danger?"

The deceased was employed to attend a pump propelled by gasoline power. It was his duty to keep watch over the pump, and see that it was supplied with the necessary amount of gasoline to keep it in constant action. Sometimes the gasoline was hauled to the pump by tractor, and at other times, it was carried by hand, as was being done by Mr. Felden on the fatal day.

The Commission found that the work did not expose Mr. Felden to the force of nature to a greater extent than he would have been had he not been so employed—that his employment did not increase the danger. The finding of the Commission has the force and effect of a verdict of a jury if supported by substantial and competent evidence. In determining whether the award of the Commission was justified by the evidence, the court considers only the evidence most favorable to support the award, together with all reasonable inferences to be drawn therefrom. With these principles in mind the evidence is reviewed.

Respondents' position is that by reason of the failure of the employer to place at the pump fuel necessary for its operation, deceased was compelled to leave his place of employment and go into an area which was to be charged with electricity sufficient to cause instant death. No direct testimony was introduced to show that the place where deceased was found was any more apt to be struck by lightning than any other surrounding area. Respondents evidently proceeded upon the theory that the mere fact that deceased was found at that particular place showed that it was unusually hazardous. It may be that the court is expected to take judicial notice that deceased with a small wrench in his hand, thirty-five feet from a partly buried disconnected cable, was more exposed to lightning on an old earthern levee, seventeen feet high and about eight feet wide, than were others in the neighborhood. Courts may take judicial notice of any scientific fact which may be ascertained by reference to a standard encyclopedia. However, we believe it would be stretching the scope of judicial notice to hold that this particular place on the levee was one affording an extraordinary hazard. As a matter of fact, this court is not convinced, after referring to a standard encyclopedia, and many cases in which lightning was discussed, that the place in which deceased was found was one which was uncommon, so far as its dangers were concerned, to the people generally. We are unable to find any special or peculiar danger from lightning to which Mr.

Felden was exposed from attending the engine and obtaining gasoline for it. No expert or other evidence was offered to show that his presence on the levee involved any greater danger of being killed by lightning than if he had been working in a field or garden. It was not shown that lightning was a risk peculiarly incident to his employment. It is not enough for the claimants to say that the accident could not have happened if deceased had not been engaged in the employment, or if he had not been in that particular place. The burden of proof was upon claimants to show that the accident arose because of something deceased was doing in the course of his employment, and because he was exposed by the nature of his employment to some peculiar danger not common to the neighborhood. "Out of" as used in the Act involves the idea that the injury is in some sense due to the employment, and the claimants must show a causal connection between the death of Mr. Felden and his employment. The evidence and all favorable inferences are to the contrary.

The duties of the deceased did not require him to remain in constant attendance at the pump. As long as the pump was going he could follow his inclinations in moving around in that vicinity. He had no duties to perform which required his continuing presence on the levee although he would have to pass over it in obtaining gasoline. At 3 o'clock he was seen sitting on a box looking along the levee away from the shacks and pump, and facing the drag line machines which were operating 1000 feet away. He was within close range of the pump and could observe it. His body was found about 5:30 o'clock near this box and a can of gasoline was a few feet away. The reasonable inference is that he sat down at his own convenience to watch his fellow employees. He certainly was not holding the can of gasoline when he was killed as it was not disturbed. His car was only a short distance away, as were the canvas cover at the engine and the shacks. Mrs. Berry obtained shelter before the fury of the storm broke, and it is not unreasonable to infer that Mr. Felden could have done so had he desired.

Major F. W. L. Peebles, a consulting electrical engineer and a reserve officer in the U. S. army, gave it as his expert opinion that when on the levee Mr. Felden would incur substantially the same risk of being struck by lightning as he would if elsewhere in the community; that the height of the levee did not create a hazard because the slopes were covered by the growing vegetation which went higher than the crown of the levee; and that Mr. Felden was not killed by a direct stroke of lightning but by an induced current. Major Peebles described the topography of Southeast Missouri including Dunklin, Mississippi, New Madrid, Pemiscot, Scott and Stoddard counties and classed it as a rural community; that in Mississippi County over six per cent of the gainfully employed were engaged in agriculture; and that these people spent about ninety-eight per cent of their employ-

ment time in the open. He said that it was his opinion Mr. Felden's employment and his presence on the levee was a hazard no greater than that of any one else in an open field; and that employment at the particular place would not constitute any greater hazard of lightning than was common to the neighborhood generally.

According to statistics, as related by Major Peebles, there is a higher death rate by lightning in the United States than in any other country except Hungary. There is no way of knowing where lightning will strike, hence no way of guarding against its freakish action. Our Act does not make compensable injury or death from all causes. In the Missouri cases in which lightning caused injury or death and compensation was allowed, the human element entered, and some agency of man joined with the act of God to increase the danger of the employment. [Van Kirk v. Hume-Sinclair Coal Mining Co., 226 Mo. App. 1137, 49 S. W. (2d) 631; Brooks v. Greenberg, 67 S. W. (2d) 823; Cragget v. Greenberg, 67 S. W. (2d) 825; Buhrkuhl v. F. T. O'Dell Construction Co., 340 Mo. 1155, 95 S. W. (2d) 843, 104 S. W. (2d) 671.] When an act of God causes injury or death without the intervention of human agency, compensation is not allowed. [Stone v. Blackmer & Post Pipe Co., 224 Mo. App. 319, 27 S. W. (2d) 459; Hoenig v. Industrial Commission of Wisconsin, 150 N. W. 996; Netherton v. Lightning Delivery Co., *supra*; Alzina Construction Co. v. Industrial Commission (Ill.), 141 N. E. 191; Wiggins v. Industrial Accident Board (Mont.), 170 Pac. 9; Griffith v. Cole Brothers (Iowa), 165 N. W. 577.] The facts differ in all these cases and it would serve no useful purpose to discuss them at length.

Whether Mr. Felden was killed by a direct stroke of lightning or by an induced current matters little. Although perhaps another felt the same shock which killed him, no one else in that vicinity suffered his fate—one was taken, the others left. The undisputed evidence and all favorable inferences to be drawn therefrom indicate that Mr. Felden was killed in the course of his employment by an act of God without the intervention of human agency. Therefore, the award of the Commission should not have been disturbed.

The judgment of the circuit court is reversed. *Smith, J.,* concurs; *Allen, P. J.,* absent.