STATE HIGHWAY DEPARTMENT
of Texas, Appellant,

v.

John H. KLOPPENBERG et ux., Appellees.

No. 14200.

Court of Civil Appeals of Texas.

Houston.

Oct. 24, 1963.

Rehearing Denied Nov. 7, 1963.

Waggoner Carr, Atty. Gen., Fred D. Ward, Asst. Atty. Gen., Austin, for appellant.

Armond G. Schwartz, Hallettsville, for appellee.

BELL, Chief Justice.

This is a workmen's compensation case. Appellee, John H. Kloppenberg, was an employee of the appellant on August 14, 1959, and on such date, while acting in the course of his employment, was injured when he was struck by lightning. On trial to the court without a jury, it was found that appellee at the time of his injury was engaged in performance of duties that subjected him to a greater hazard from lightning than ordinarily applied to the general public. The court also found that appellee was totally and permanently disabled. Judgment was accordingly rendered for appellee.

Appellant first attacks the trial court's finding that the employee was at the time of his injury subject to a greater hazard from lightning than the general public on the ground there is no evidence to support it. It next attacks such finding as being so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong. Appellant also attacks the finding of total and permanent · disability on both of the above theories.

The evidence shows that appellee was employed by appellant to do work on the State highways of Texas in Lavaca County. On the day in question appellee, with another employee, was working near the steel and concrete bridge that spanned the Navidad River on State Highway 77. At the time lightning struck appellee he was engaged in drilling a hole in a post on the approach to the bridge so a reflector button could be placed in it. He had hit the steel brace and bit in order to drive it into the post sufficiently to commence drilling and had commenced drilling. The post was a newly set, freshly creosoted wooden post. It was about 1:45 p. m. on a hot August afternoon. The post was on a promontory that arose substantially above the surrounding terrain. Appellee's clothes, including his shoes, were wet from his having perspired profusely. His hands were wet with perspiration. The steel brace and bit he was working with was about 18 inches or two feet in length. It does not appear how far in footage the post was from the concrete and steel bridge, but it does appear appellee was working on the eighth post from the north end of the bridge.

A rain storm was observed by appellee and his co-worker and it was moving toward them. The co-worker, who was painting, went to the truck to put up the paint and brush to avoid water getting in the

paint. It does not appear just how far the truck was from appellee but it was a considerable distance away. The rain storm had not yet reached where appellee was working. As the co-worker was looking for the gasoline to put his brush in, he heard a loud clap of thunder. He looked and saw appellee lying on the ground. He went to him and found appellee was unconscious. He observed the hole was partially drilled but had not been completed. He applied artificial respiration briefly and then put appellee in the truck and took him to the hospital in Hallettsville. Mr. Rother, the co-worker, testified the right shoe of appellee was "bursted" and his clothes were in shreds.

■ Appellee introduced evidence from the manager of the Hallettsville electric light plant and a representative of the telephone company to testify something about the nature and behavior of lightning and about materials that especially attract lightning or electricity. The substance of their testimony is that while wood is a poor conductor of electricity, it becomes a good conductor when wet. They also stated if the brace and bit had become magnetized it would especially attract lightning. Also they testified a jar or the striking of the brace and bit would cause it to be magnetized. We judicially know that steel particularly attracts lightning. Water, of course, is a good conductor of electricity. Their testimony also showed the electricity discharged into the atmosphere by the lightning travels in a straight path and seeks a ground. It also establishes that lightning most frequently strikes points higher than the surrounding terrain because there are objects projecting from out of the soil that serve as a ground to carry the electricity into the earth.

■ We are of the view that there is evidence, and it is sufficient to support the trial court's finding that appellee's work at the time of the occurrence subjected him to a greater hazard from lightning than the ordinary public. The court could well conclude that appellee furnished a particularly good ground for the electricity which especially attracted it because he was working on a promontory close to a concrete and steel bridge with a steel brace and bit, boring a hole in a freshly creosoted, and therefore, wet, post, when his body, including his hands with which he was holding the brace and bit, and his clothes including his shoes, were wet with perspiration.

We find the facts of this case different in no material respects from the facts in the case of United States Fidelity and Guaranty Company v. Rochester, 281 S.W. 306 (C.C.A.), expressly approved by the Supreme Court of Texas in 115 Tex. 404, 283 S.W. 135, and in the case of Traders and General Insurance Company v. Pool, 105 S.W.2d 492 (C.C.A.), writ dism. These authorities are therefore controlling. See also 16 Texas Law Review 131.

Dr. Renger treated appellee from the time of his injury until about six months before trial in November, 1962. He testified to permanent injury to the central nervous system and to the heart muscle. He testified appellee could not do heavy manual labor and he would say appellee had 50% disability.

Appellee was in the hospital two weeks. He was off work about three months. He went back to work for appellant doing substantially the same work. There is testimony from his co-worker that he could not do his work as well. He testified he quit his job because he just couldn't do the work. Heavy work put too much of a strain on his heart. While he was working, after his injury, at his same job, he received a wage increase of 5 cents per hour and since he worked regularly for about a year, his earnings were more for that year than preceding the injury.

■ Appellant's attack on the court's finding of total permanent disability is based largely on the doctor's testimony

of only 50% disability and the fact that appellee made more money after his injury than before. These facts are but evidentiary on the issue of incapacity. They are not controlling. Under all the evidence we are of the view that the trial court correctly concluded appellee's disability was such as to prevent him from obtaining and retaining employment. American General Ins. Co. v. Florez, 327 S.W.2d 643 (C.C.A.), no writ hist.; General Accident Fire and Life Assur. Corp. v. Murphy, 339 S.W.2d 392, (C.C.A.), ref., n. r. e.; Superior Ins. Co. v. Burnes, 278 S.W.2d 934 (C.C.A.), ref., n. r. e.

 Appellant has a point of error complaining of the action of the trial court in overruling an exception to appellee's pleading. It is not briefed and is, therefore, waived.

The judgment of the trial court is affirmed.