Sandra F. REICH, Spouse of Steven F. Reich, Deceased, Claimant-Respondent,

v.

A. REICH & SONS GARDENS, INC., Employer-Appellant, and Glens Falls Insurance Company, Insurer-Appellant.

No. 25977.

Missouri Court of Appeals, Kansas City District.

Sept. 7, 1972.

Lee E. Wells, McKenzie, Williams, Merrick, Beamer & Wells, Kansas City, for employer and insurer-appellant.

Heywood H. Davis, Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, for respondent.

CROSS, Judge.

Steven F. Reich, now deceased, was struck and killed by lightning on August 8, 1968, in the course of his employment by A. Reich & Sons Gardens, Inc. (sometimes referred to hereinafter as "Reich" or "employer" or as an appellant). As his surviving spouse and sole dependant Sandra F. Reich filed her claim for workmen's compensation death benefits. Upon hearing, the referee entered an award in the claimant's favor, allowing her $800.00 for burial expenses and $17,500.00 for death benefits, payable $57.00 per week for 307.-071 weeks. The Industrial Commission affirmed the referee's award, and, upon appeal by the employer and insurer, the circuit court entered judgment affirming the decision and award of the Industrial Commission. The employer and insurer have appealed to this court. The sole question raised is whether Steven F. Reich's death arose "out of his employment" within the meaning of V.A.M.S. Section 287.120, subd. 1.

At the time of his death, Steven Reich was vice president and an employee of A. Reich & Sons Gardens, Inc., a family owned corporation engaged in the business of growing mushrooms and other "general table crops" for canning, freshpacking and wholesale marketing. As such officer of the corporation, he had charge of the "general workload" pertaining to management of other employees and crop operations. Prior to his death he had negotiated a contract with the owner of a hay field in an area known as the Courtney Bottoms, in Clay County, north of the Missouri River, permitting Reich to remove baled hay therefrom. The hay had been damaged by water, but was useable in Reich's business as compost. The field referred to contains approximately forty-seven acres and is commonly known as "McGee" land. Courtney Bottoms is a flat, level, open area, generally devoted to grain farming and pasturage.

On August 8, 1968, at the direction of Steven Reich, five employees of Reich

proceeded to load up and remove the hay from the field mentioned. Upon delivery of the first truckload at Reich's plant, in Kansas City, Steven Reich inspected it and determined it was too wet for the intended use, and decided to discontinue further removal of it from the field. To that end, Steven Reich drove from Reich's Kansas City plant to the hay field where the men were working, arriving at about 4:00 P.M. Prior to that time storm warnings had been sounded, the atmosphere had become hot and muggy, and black clouds had gathered in the northwest. Upon alighting from his car, Steven Reich directed the men to leave the field because there were indications that a storm impended. We here note the position of Steven Reich with relation to other persons and adjacent objects. As he was giving his directions, he himself, his car, two other vehicles, and the other men who had been working, were all near the middle of the field, surrounding a pile of hay bales. One of the other vehicles was a tractor-trailer unit over forty feet in length, with a trailer eight feet in height and a cab approximately ten to ten and one-half feet high, above which an exhaust pipe extended approximately one or two feet. The described unit was approximately ten to fifteen feet from the pile of hay. The second vehicle was a dump truck, approximately seven feet high, with a twelve foot body, also parked ten to fifteen feet from the hay. Steven Reich had parked his car in the general area of those two other vehicles, a short distance from the pile of hay. After a brief discussion with the employees, Steven Reich, (himself six feet tall) stood beside his automobile while two of the employees got into the cab of the tractor-trailer. At that time two other employees were inside the dump truck cab and another employee, Alfredo Razo, who was five feet four inches tall, was standing on the ground about five feet from Steven Reich's car. The tractor-trailer started forward, and after it traveled ten to fifteen feet, a bright, "kind of blinding" flash of lightning occurred, one of the men yelled, and Steven Reich fell to the ground

unconscious. He was removed by ambulance from the field and taken to Independence Hospital, where he was pronounced dead. He had expired without regaining consciousness. Upon observation it was seen that his shirt was ripped open, two ball point pens carried in his shirt pocket had been welded together, holes had been burned in memorandum calendars which he also carried in his shirt pocket, and a strip was burned on the leg of his trousers. Soon after the tragedy occurred the sky blackened and heavy rain fell.

It is not suggested by appellants that Steven Reich's death resulted from any cause other than electrocution by lightning. They concede that the death was caused by an accident which arose *in the course of the employment* within the terms of V. A.M.S. Section 287.120. As above indicated it is appellant's sole contention that the death did not arise *out of the employment* because (so they assert) there is no substantial evidence that deceased's employment increased the risk of death or injury by lightning over and above that of other persons in the general public situated in the same vicinity.

■■■ In law, injury or death caused by lightning is deemed to be an act of God, which is defined in Corrington v. Kalicak, Mo.App., 319 S.W.2d 888, as "'an occurence due to natural causes against which ordinary skill and foresight is not expected to provide.'" Many other definitions are found in legal writings, but running through all of them is the concept that an act of God is an accident produced by irresistible natural forces, without intervention of human agency. Generally speaking it is the law that injury or death caused by an act of God is not compensable in a workmen's compensation case (or, for that matter, in an action at common law). Buhrkuhl v. F. T. O'Dell Construction Co., 232 Mo.App. 967, 95 S.W.2d 843. However, the principle is subject to the exception, observed in Missouri and numerous other states, that injury or death caused by an act of God is compensable

when it is shown that the character of the employment subjected the employee to hazards from the causative natural force greater than those to which the general public *in the same vicinity* is exposed. The exception noted is exemplified by the following quoted excerpt from Brooks v. Greenberg, Mo.App., 67 S.W.2d 823 (a lightning case):[1] "As a general proposition it is indeed true that the defense of act of God applies in a compensation case, *unless it be shown that the nature of the particular employment in which the employee was engaged subjected him to risks and hazards from the forces of nature over and above those to which the public generally was exposed.*" (Our emphasis.) Also see Schmidt v. Adams & Sons Grocer Co., Mo.App., 377 S.W.2d 564, 566, where this court stated that an employee injured by act of God (lightning) cannot have compensation for his injuries "unless he was, by reason of his employment, exposed to the risk of being struck by lightning to a greater degree than was the public generally, *in the same vicinity.*" (Our emphasis.)

Relative to the question inherent in the rule of law we have noted, which governs the decision of this case, the referee found as follows:

"I find and believe from all the credible evidence that the employee, Steven F. Reich, deceased, sustained an accident arising out of and in the course of his employment with A. Reich & Sons Gardens, Inc., on August 8, 1968, in Jackson County, Missouri. I find and believe from all the credible evidence that the employee while standing in an open hay field, directing other employees of said company to cease working in said open hay field, was caused to be struck by lightning and electrocuted.

"I find and believe from all the facts and credible evidence that the open, level, flat and unprotected hay field the deceased employee was working subjected him to greater risks of being struck by lightning over and above those to which the public generally is exposed."

The Industrial Commission rendered a comprehensive and exceptionally well reasoned opinion holding that "the award of the referee herein is correct in all respects and is supported by competent and substantial evidence." Further, the Commission stated:

"The Commission finds, like the referee, that based on the weight of the credible and substantial evidence that Steven Reich by the nature of his employment in an open, level, flat and unprotected field subjected him to a greater risk of being struck by lightning over and above that to which the public generally was exposed. This finding nullifies the defense of an Act of God and therefore leads the Commission to find that the accident arose out of Steven Reich's employment."

The parties are correctly in agreement that the function of this court, under the record of this case, and pursuant to V.A.M.S. § 287.490, is to determine whether the findings of the commission are supported by substantial, competent evidence, and whether or not those findings

---

1. Also see Lake v. Midwest Packing Company, Mo., 301 S.W.2d 834; Felden v. Horton & Coleman, 234 Mo.App. 421, 135 S.W.2d 1115; for a discussion of the increased risk doctrine as applied to lightning cases see Larson's Workmen's Compensation Law, Vol. 1, Sec. 8.11, wherein the author states, in part: "In most lightning cases the increased-risk test has been applied, and the issue from that point on has become one of physics rather than of law, namely, whether the work conditions—such as height above the surrounding area, nearness to trees or tall structures, nearness to metallic objects likely to attract lighting, or presence of wetness and other conditions facilitating transmission of lightning—enhanced the probability of injury from lightning.

Generally, courts take judicial notice that lightning is attracted to high places and structures, such as hilltops, scaffolds, roofs, and even the height of a human being projecting above an open level surface."

are clearly contrary to the overwhelming weight of the evidence. To that end we examine the record to resolve the critical evidentiary question of whether deceased was exposed to greater hazard of injury or death by lightning than was the general public in the same vicinity.[1]

In order to effect that comparison, it is first necessary to identify the environs of McGee field, which comprise the "vicinity" wherein the subject "general public" may be found. Courtney Bottoms, which encompasses McGee field, is also known as "Courtney or Birmingham Bottoms". As stated, its terrain is flat and level, extends several miles, and the main vocational interest of the area is agricultural although it includes several industries. The residential village of Birmingham is located less than a mile from McGee field and has a population of two hundred people. Also included within the "vicinity" are a feed mill; a chemical plant; Cement City, an industrial area two miles south of McGee field; a county park or marina; Vrooman Acres, a residential area a short distance south of Birmingham; various "scattered" residences to the north; the south city limits of Liberty, Missouri; a Standard Oil refinery across the Missouri River two miles south of McGee field; an automobile service station to the east of 71 By-pass; also several public roads traveled by people in vehicles.

In dealing with the instant question both parties produced expert testimony at the hearing before the referee. Testimony was given on behalf of claimant by Seth Kemble, a consultant meteorologist with more than eighteen years of practicing experience. He received his training in the United States Air Force and spent ten years in that service as a meteorologist. Thereafter he was employed by Braniff International Airways, Inc., and in 1962 was instrumental in establishing Weather Forecasting, Inc., a private weather service, with offices in Amarillo, Cleveland and Kansas City. At the time of the hearing, Mr. Kemble was president and general manager of Midwest Weather Service in Kansas City. The witness personally viewed the site of the fatal accident, identified photographs thereof, and in response to a hypothetical question incorporating physical facts pertinent to the "increased hazard" issue, offered his opinion as an expert familiar with the phenomenon of lightning and thunderstorms. The question postulated deceased's exposed presence in the generally open field and surrounding terrain; the reciprocal adjacency of decedent, the tractor-trailer and dump truck, the employee who was also standing exposed in the open field, and the four additional

1. Pertinent to that question is the following statement of Larson in Workmen's Compensation Law, Vol. 1, Sec. 8:42 (which the Industrial Commission also saw fit to quote): "The heart of the difficulty is almost entirely in defining the general public with which comparison is to be made. It is here that many of the negative cases have gone wide of the mark. Clearly, since the object of the comparison between the exposure of this employee and the exposure of the public is to isolate and identify the distinctive characteristics of this employment, the comparison should be made with a broad cross section of the public having no characteristics specially selected because they resemble those of the employment. Because most of these cases arise during extremely hot, cold, rainy, or stormy weather, the most direct way to appoach a working rule is to ask: What does the average man, free of the obligations of any particular employment, do when it is twenty below, or a hundred in the shade, or raining, sleeting, or snowing violently? There may be various answers as to what he does, but there is one clear answer as to what he does *not* do. He does not stay outdoors all day. Yet a surprising number of cases narrow the class of the general public to people who do just that. * * * Several other cases have likewise compared outside workers with other outside workers. But the whole point is that these workers are outside because it is the nature of their employment to require them to be outside. Unless so required, any sane and adult member of the general public is supposed to 'have sense enough to come in out of the rain.' "

employees who were inside the tractor-trailer and dump truck; and, additionally, the approach of a thunderstorm on a hot and muggy summer afternoon. As to whether the two exposed men (Steven Reich and Alfredo Razo) were "subject to a greater risk of being struck by lightning than the general public in the area", Mr. Kemble testified: "I would be of the opinion in an open area such as the field in which we visited last week that the individuals outside of the vehicles in relationship to those inside the vehicles in that area would be more susceptible to being struck by lightning; and also, in a general sense, *they would be more susceptible than in surrounding area due to the precise location that they were located at that time —the openness area of the field, the lack of any structures of any significant height; or tree coverage, or things like that.*" (Our italics.) The witness enumerated two factors that determine where lightning will probably strike. One is the height and size of an object—the other being whether or not the object is well-grounded. For example, he said, lightning might first be attracted to the height of the smokestack on the highest truck, but as it came toward the ground seeking the "opposite charge", it would be diverted to the area of least resistance "which is the man standing with his feet grounded, whereas the truck is sitting on rubber tires, so there is no good ground there." A lone man riding on any type of rubber-tired tractor out in a field would not be as susceptible of being struck by lightning as an individual surrounded by three large vehicles (as was deceased). It was Mr. Kemble's opinion that an open area with a "cluster" of well-grounded objects is more likely to attract lightning than one whereon such objects are separated by some distance. He testified, "Now, this is when it is in a cluster, as I used earlier—a group of vehicles or something in an open area. Now, obviously, this would not be pertinent downtown or in a forest because the whole area—But when we are talking primarily of an open area and then a group of people or cars, or

vehicles, then it becomes more susceptible to lightning than the surrounding area of the same terrain without those same properties."

Appellants offered Professor Edwin Robert Whitehead, of the Illinois Institute of Technology, as their expert witness. Professor Whitehead is an electrical engineer with impressive qualifications in his professional field. Preliminarily, and in considerable detail, he explained his technical concepts of lightning. Upon direct examination, pursuant to hypothetical inquiry, Professor Whitehead testified that the two men standing in the McGee field were no more susceptible of being struck by lightning than any other person in the general area, or a man in either of two adjacent fields. He further stated that the "cluster" of vehicles in the McGee field would not increase the likelihood of lightning striking the two men standing nearby.

When cross-examined, Professor Whitehead underwent a radical turnabout of opinion. Without equivocation he stated that a man inside a motor vehicle, "the man seated in the cab for example", is "far more" safe than a man standing in the field and that he "certainly" would agree with the well recognized safety precaution to "stay in your automobile if you are traveling. An automobile offers excellent lightning protection"—as stated in an official pamphlet entitled "Lightning" published by the United States Department of Commerce Environmental Science Offices Administration. The witness readily acknowledged "that a man standing in an open field is clearly more subject to being stricken by lightning than someone in a motor vehicle or someone in some other building" – – – or "some one in a structure, in a house, – – – or in an office building."

Professor Whitehead climaxed his cross-examination by testifying unqualifiedly that a man standing in an open field was subjected to greater exposure from being

struck by lightning than people traveling in motor vehicles upon roads in the general area; residents of the town of Birmingham about three quarters of a mile to the west; persons in the residential area of Vrooman Acres south of Birmingham; persons in a service station to the east of 71 By-pass and workers inside an oil refinery located approximately two miles south of the field. His cross-examination was concluded with the following questions and answers:

"Q. What I am asking you in this particular question is as to the service station; Vrooman Acres' residential area in addition to the one shown in the photograph, Exhibit 2 (Birmingham); and as to the oil refinery two miles or so south; as to whether in a general thunderstorm situation in the area, with some movement of clouds and not just one shot of lighting, but, presumably, other lightning experiences, whether then a man in that field is subject to greater exposure, risk from lightning, than a man in the service station, in the residential area in a house, or in one of the buildings of the oil refinery.

A. He is, indeed.

Q. And that because he is exposed is the principal reason, whereas the other people would not be?

A. Well, the degree of exposure would be greater.

Q. The degree of exposure would be greater?

A. Yes.

Q. I earlier alluded to a pamphlet of the U. S. Department of Commerce, Environmental Science Service Administration, entitled 'Lightning' and some of the safety rules generally on the back of this pamphlet; and I notice that the first listed rule among these safety rules is 'Stay indoors and don't venture outside unless absolutely necessary.' Would you agree that that is a proper safety precaution in a lightning situation?

A. In general, I think that is the proper thing to do, yes."

The above outlined testimony of either expert witness—Mr. Kemble or Professor Whitehead—alone and of itself, amounts to substantial, convincing evidence that decedent standing in an open field as the tallest grounded object in the immediate area, was exposed to greater hazard from danger of lightning than other persons constituting the general public. The testimony of both experts, in combination, constitutes evidence of overwhelming weight to support that conclusion. Accordingly, we rule that claimant has sustained her burden to show that the accident which took the life of her husband arose out of his employment.

Appellants cite and rely upon Stone v. Blackmer & Post Pipe Co., 224 Mo.App. 319, 27 S.W.2d 459, Felden v. Horton & Coleman, 234 Mo.App. 421, 135 S.W.2d 1115 and Schmidt v. Adams & Sons Grocer Co., Mo.App., 377 S.W.2d 564. Those cases are not supportive of appellant's position. The act of God in the Stone case was a tornado which swept through the City of St. Louis in 1927, injuring several hundred people and causing the death of some seventy-three persons. An employee, on whose account death benefits were claimed, was killed by brick falling from a collapsed smokestack, while working inside a particular building. Impressed by the magnitude of the disaster and its widespread devastation, the court concluded: "It is obvious, we think, that the fact that deceased was in this particular building, which was one of many that were damaged by the tornado, cannot be held to have subjected him to greater hazard than others who were in the path of the tornado. Many people were injured or killed by the tornado, as the record shows, who were in other places, and, as is usual with tornadoes, many buildings and smokestacks in the path of the storm were uninjured."

That situation is in vivid contrast with the single casualty which occurred in this case. In the Felden case, benefits were claimed for death of an employee caused by lightning, but denied because it was established *by expert testimony* that decedent's employment in an open field on a levee "was a hazard no greater than that of any one else in an open field" or that which was "common to the neighborhood generally." Such is not the expert testimony in this case. Likewise, in the Schmidt case, where an employee was injured by lightning, the record was devoid of substantial evidence, expert or otherwise, to establish "that plaintiff was exposed to greater danger of being injured by lightning than others in the general area where he was employed."

The judgment is affirmed.

All concur.