CRAWLEY, Judge.

I.Facts and Procedural History

Richard Byrom (“the worker”) was employed by Ceasco, Inc., d/b/a Skill Lube (“the company”), as a service manager at an automobile service and repair store operated by the company in Madison. As a part of his job, the worker made telephone calls to customers, vendors, employees, and supervisors. The worker was responsible for ordering parts, answering questions regarding repairs, giving price quotations, and checking on large accounts and outstanding accounts. Approximately 30% of the worker’s day was spent on the telephone, performing these duties.
On July 24, 1998, as the worker was on the telephone as a part of his customary duties, the telephone line was struck by lightning; the worker received an electrical shock through the telephone, which caused him to lose consciousness. The worker does not recall the incident, but remembers only talking on the telephone and then waking up approximately six feet away on the floor. He contends that the shock threw him six feet and that he landed on the concrete floor, hitting his head. The worker suffered a fracture to the C2 spinous process and has what he describes as “blackouts.”
The worker sued the company, seeking workers’ compensation benefits. After a trial, the trial court awarded benefits to the worker, finding him permanently and totally disabled. The company appeals the trial court’s judgment.

II.Standard of Review

Our review of this case is governed by the Workers’ Compensation Act, which states, in pertinent part: “In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.” Ala.Code 1975, § 25-5-81 (e)(2). Therefore, this court “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). Further, the trial court’s factual finding is supported by substantial evidence if it is “supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12 — 21—12(d)). Our review of legal issues is without a presumption of correctness. Ala.Code 1975, § 25 — 5—81(e)(1); see also Ex parte Trinity Indus., 680 So.2d at 268.

III.Arguments of the Parties

The company specifically contends that the worker’s injuries were caused by a “nonaccidental” event. Based on this contention, the company argues that the worker was required to prove legal causation, i.e., that in performing the duties for which he was hired he was exposed to a risk materially in excess of the risk to which all people are normally exposed in their everyday lives. See Ex parte Trinity *935 Indus., Inc., 680 So.2d 262, 266-68 (Ala.1996); City of Tuscaloosa v. Howard, 55 Ala.App. 701, 705, 318 So.2d 729, 732 (Ala.Civ.App.1975). According to the company, the worker’s evidence failed to establish that in performing his duties he was exposed to a risk materially in excess of the risk to which people are normally exposed in their everyday lives.
The worker, however, argues that he need not prove that he was exposed to a risk materially in excess of the risk to which people are normally exposed in their everyday lives. Instead, the worker contends that his being struck by lightning was an “accidental” — as opposed to “non-accidental” — injury and that he therefore was required to prove only that the injury occurred “ ‘within the period of [his] employment, at a place where [he would] reasonably be and while [he was] reasonably fulfilling the duties of [his] employment or engaged in doing something incident to it.’ ” Kewish v. Alabama Home Builders Self Insurers Fund, 664 So.2d 917, 922 (Ala.Civ.App.1995) (quoting Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955)). Thus, he says, he met his burden by showing that he was injured during working hours, while conducting business on the telephone in the company’s office. However, in the alternative, the worker does argue that, in the event this court disagrees with his position and determines that the injury was nonaccidental and that the legal-causation standard adopted by our supreme court in Ex parte Trinity Industries does apply, he did present substantial evidence sufficient to carry his burden under that standard.
In addition to the legal-causation issue, the company argues that the worker failed to prove medical causation. It further argues that, even if legal and medical causation were proven, the worker has not proven that he is permanently and totally disabled. Because we resolve the issue of legal causation in favor of the company, we do not address the medical-causation or the extent-of-disability issue.

TV. Discussion

A. Overview of the Legal Causation Requirement

Alabama’s workers’ compensation law requires a worker seeking workers’ compensation benefits for an injury to establish that the injury occurred ■ in the course of his or her employment and that the injury arose out of that employment. Ex parte Trinity Indus., 680 So.2d at 265. To be entitled to compensation, a worker must establish both legal causation and medical causation. In a typical workers’ compensation case involving an accidental injury caused, for example, by “being struck by a falling hammer ... or slipping off a ladder,” a worker “need only produce substantial evidence tending to show that the alleged ‘accident’ occurred” in order to establish legal causation. Id. at 266 n. 3. However, in cases involving injuries not caused by “a sudden and [traumatic] external event,” i.e., “nonaccidental” injuries, the test for legal causation requires more than just proof that there exists “a close spatial or temporal relationship between the injury and the place or time of the [worker’s] performance of his or her job,” id. at 269, because “ ‘in Alabama the employment must be the source and cause of the accident.’ ” Id. at 268 (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 201 (Ala.Civ.App.1981)).
This state has specifically rejected the “but-for” test for causation in workers’ compensation cases. Martin, 417 So.2d at 202. The but-for test allows a worker to be compensated for an injury if that injury occurred while the worker was present at *936 Ms place of employment and performing his duties.[1] As this court has explained: “The but-for test is clearly not the test for causation under [Alabama law]. Instead, the burden is on the [worker] to establish a definite causal connection between the work and the injury.” Id.
As the company points out, the worker’s argument that he proved that he was injured during worMng hours, while at work conducting business for the company and therefore established legal causation in this case is an oversimplification at best and is akin to arguing that but for his being at work, he would not have been injured. The but-for test has been rejected by Alabama courts. The worker must “establish a definite causal connection between the work and the injury.” Martin, 417 So.2d at 202. To decide exactly what the worker is required to prove to establish legal causation, however, we must first decide whether the worker suffered an accidental injury or a nonaccidental injury.
After considering the only case in Alabama involving workers’ compensation benefits for a death caused by lightning, cases from other jurisdictions, and two leading treatises, we have concluded that the injury sustained by the worker, although certainly sudden and traumatic, was not an “accidental” injury as that term is used in Alabama’s workers’ compensation law. Instead, the worker suffered a nonaccidental injury.

B. Legal Causation in Cases Involving Injury or Death by Lightning

The only Alabama case involving a worker’s compensation claim arising from injury or death by lightning is American Fuel & Clay Products Co. v. Gilbert, 221 Ala. 44, 127 So. 540 (1980). Gilbert was struck by lightning while working inside a tipple, which is a structure from which coal is emptied into railroad cars. Gilbert, 221 Ala. at 46, 127 So. at 541. Lightning hit a sign atop the tipple, traveled down ungrounded guy wires, and entered the roof at a point above where Gilbert was engaged in his work. Id. The trial court awarded compensation on the basis of several findings. Specifically, the trial court found that the lightning had not been attracted by the sign or the guy wires, but that had the guy wires been grounded, the lightning would have followed the ground wire to the ground and not have gone through the roof. Id. at 45, 127 So. at 540. In addition, the trial court noted that the lightning, once it struck the tipple, had followed the guy wires and had gone through the roof to strike Gilbert, who was working beneath. Id. Perhaps the most important finding the trial court made, however, was that “ ‘Gilbert’s place of work did not subject him to any risk of injury or death from lightning which was substantially beyond the normal ordinary risk to which the average person is exposed in a place of like kind or in a building of like kind in the same general vicinity.’ ” Id. at 45,127 So. at 541. *937 The supreme court first affirmed the award of benefits,[2] explaining at length what one commentator has called the “increased-risk” doctrine,[3] which, in recent years, has been embodied, with some modification, in our supreme court’s pronunciation of the correct legal-causation standard for nonaccidental injuries in Ex parte Trinity Industries, Inc. The Gilbert court, quoting the United States Supreme Court, stated the rule as follows:
“ ‘If it is the normal risk merely which causes the accident, the answer must be that the accident did not arise out of the employment. But if the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk ... or if the continuity or exceptional amount of exposure aggravates the common risk ... then it is open to conclude that the accident did not arise out of the common risk, but out of the employment.’ ”
Gilbert, 221 Ala. at 46, 127 So. at 541 (quoting Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366 (1923) (quoting in turn Anderson v. Adamson, 50 Scot. L.Rev. 855)).
Based on the findings relating to the guy wires in the trial court’s order, the Gilbert court determined that the ungrounded guy wires had increased Gilbert’s risk of being struck by lightning. Gilbert, 221 Ala. at 47, 127 So. at 542. Thus, the court concluded that Gilbert was struck by lightning “as a direct result of a condition which creates a hazard which cannot be said to be a common risk, but was peculiar to him on account of the location of his work.” Id. Based on this conclusion, the Gilbert court affirmed the trial court’s award of benefits because Gilbert’s death “arose out of as well as in the course of his employment.” Id.
Over the years, the increased-risk test first set out in Gilbert has been applied, although worded differently as the law of workers’ compensation has developed, in numerous cases, beginning with Gulf States Steel Co. v. Christison, 228 Ala. 622, 628, 154 So. 565, 569 (1934) (involving injuries resulting from heat exhaustion), which reformulated the increased-risk test to include the term “materially in excess,” and continuing through Pow v. Southern Constr. Co., 235 Ala. 580, 583-84, 180 So. 288, 291 (1938) (involving a death caused by exposure to wet and cold), Gadsden Iron Works, Inc. v. Beasley, 249 Ala. 115, 118-19, 30 So.2d 10, 13 (1947) (involving a death caused by a heart attack that resulted from excessive heat exposure), Alabama Pipe Co. v. Wofford, 253 Ala. 610, 612, 46 So.2d 404, 405 (1950) (involving a death resulting from a heart attack not proven to have resulted from excessive exposure to heat), Southern Cotton Oil Co. v. Wynn, 266 Ala. 327, 332, 96 So.2d 159, 163 (1957) (involving a death from a cerebral hemorrhage caused by excessive physical exertion), and City of Tuscaloosa v. Howard, 55 Ala.App. 701, 705, 318 So.2d 729, 732 (Ala.Civ.App.1975) (involving injuries resulting from a heart attack that was *938 not shown to be related to strenuous activity or other exposure). Finally, as related above, that same test has been embodied in the legal-causation test for nonaccidental injuries stated by our supreme court in Ex parte Trinity Industries, Inc., 680 So.2d 262, 266 (Ala.1996) (involving a stroke caused by excessive cardiovascular stress).
In all the cases mentioned above, the courts were attempting to determine whether a particular injury or death was compensable. Unlike the typical “accident” case referred to in Ex parte Trinity Industries, where a hammer falls on a worker or the worker falls from a ladder, see Ex parte Trinity Industries, 680 So.2d at 266 n. 3, the cases involving exposure to heat and cold, and more recently the cases involving heart attacks and strokes, present a challenge to a court attempting to determine if the injury or death actually “arose out of’ the worker’s employment. In the present case, we are faced with that same task. Does the injury caused by lightning in this case arise out of a worker’s employment?
Although the Gilbert court ultimately reversed the award of compensation to Gilbert’s widow because the trial court had expressly determined that Gilbert had not been exposed to an increased risk of lightning, Gilbert, 221 Ala. at 47, 127 So. at 542, the causation test set out by the court remained unchanged. The leading treatise on workers’ compensation law supports a determination that an increased-risk test should be applied to cases involving injury or death by lightning, 1 Arthur Larson and Lex K. Larson, Larson’s Workers’ Compensation Law § 5.01[1] (2001), as does the treatise on Alabama workers’ compensation law. 1 Terry A. Moore, Alabama Workers’ Compensation, § 10:10-11, pp. 329-31 (1998). As noted previously, the current legal-causation test for nonacci-dental injuries evolved from the test first set out in Gilbert. We, therefore, conclude that, based on Gilbert, the worker in the present case was required to present to the trial court evidence from which it could determine that the worker’s employment exposed him to a risk of being struck by lightning materially in excess of the risk of being struck by lightning to which people are normally exposed in their everyday lives.

V Conclusion

In the present case, the worker has only proven, at best, that he was struck by lightning while he was on the telephone conducting the company’s business and that he spends approximately 30% of his day conducting the company’s business by telephone. Other states that have awarded compensation for lightning-related injuries or deaths have been presented with expert testimony on the issue of the increased risks faced by the worker. See, e.g., McCutcheon v. Tri-County Group XV, Inc., 920 S.W.2d 627 (Mo.Ct.App.1996) (affirming an award of compensation to an in-home health-care aide who was injured when a surge of electricity caused by lightning arced from an improperly grounded outlet; expert testimony indicated that the home was not properly grounded and that the three-prong-plug adapter in the offending outlet also was not properly grounded); Beecher Wholesale Greenhouse, Inc. v. Industrial Comm’n, 170 Ill. App.3d 184, 524 N.E.2d 750, 120 Ill.Dec. 720 (1988) (affirming an award of compensation to a salesman for a wholesale greenhouse who was struck by lightning through the telephone line while conducting business over the telephone; expert testimony indicated that the conditions in the greenhouse and the layout of the telephone system in the greenhouse made the telephone line more conductive than it ordinarily would be, thus increasing the user’s risk of *939 being struck by lightning); Reich v. A. Reich & Sons Gardens, Inc., 485 S.W.2d 133 (Mo.Ct.App.1972) (affirming an award of compensation to a vice president whose duties including managing other workers who was struck by lightning while in a hay field; expert testimony indicated that the fact that the worker was standing next to a cluster of vehicles, one being approximately 12 feet in height, in an open field increased his chances of being struck by lightning); State Highway Dep’t v. Kloppenberg, 371 S.W.2d 793 (Tex.Civ.App.1963) (affirming an award of compensation to a worker drilling á hole in a wooden post on a hill in close proximity to a steel and concrete bridge; expert testimony indicated that the post into which the worker was drilling was wet and was therefore a good conductor of electricity and that the drill bit and brace on the drill would have especially attracted lighting had they been magnetized by a jar or striking, which the evidence supported having happened). In each of these cases, however, the key to compensability was not necessarily expert testimony,[4] but was rather the fact that the trial court had evidence before it from which it could determine that the worker had been exposed to an increased risk of being struck by lightning.
In the present case, we not only have no expert testimony on the issue of increased risk, we have no testimony, other than the worker’s report that he was on the telephone approximately 30% of his workday, indicating that the worker was exposed to any increased risk of being struck by lightning. This is simply not sufficient evidence to indicate that he was exposed to a risk of being struck by lightning that was materially in excess of the risk to which people are normally exposed in their everyday lives.
The worker’s evidence merely indicates that he would not have been struck by lightning had he not been on the telephone doing business for the company. To affirm the award of compensation on such meager testimony would be tantamount to deciding that the but-for test was applicable here. This we cannot do. The worker was required to prove that his injury occurred in the course of and arose out of his employment. He did not prove that his employment exposed him to a risk of being struck by lightning materially in excess of the risk of being struck by lightning to which people are normally exposed in their everyday lives. Accordingly, we reverse the trial court’s award of compensation to the worker and remand this cause with instructions that the trial court enter a judgment for the employer.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, j., concurs in the result.

. The but-for test is referred to as the "positional-risk” doctrine. 1 Arthur Larson and Lex K. Larxon, Larson's Workers' Compensation Law § 7.03 (2001). The test has been well-described by the Supreme Court of Illinois: "Under the positional risk doctrine, an injury may be said to arise out of the employment if the injury 'would not have occurred but for the fact that the conditions or obligations of the employment placed claimant in the position where he was injured by a neutral force, meaning by "neutral” neither personal to the claimant nor distinctly associated with the employment.’ ” Brady v. Louis Ruffolo & Sons Constr. Co., 143 Ill.2d 542, 552, 578 N.E.2d 921, 925, 161 Ill.Dec. 275, 279 (1991) (quoting Lex A. Larson, The Positional Risk Doctrine in Workmen's Compensation, 1973 Dulce L.J. 761, 761). Lightning is a neutral risk. 1 Larson’s Workers' Compensation Law § 4.03 (2001).

. Not one case that has cited Gilbert has indicated that the supreme court ultimately reversed the compensation award to Gilbert’s widow. Only four Justices participated in the original opinion in Gilbert. On rehearing, the full court considered the case. The decision on rehearing was stated in a succinct paragraph, which indicated that a majority of the court had determined that “the facts set out by the trial judge do not support his conclusion as to the result” and that the judgment would be reversed. Gilbert, 221 Ala. at 47, 127 So. at 542. The author of the original opinion, Justice Foster, was among the three Justices dissenting.

. 1 Terry A. Moore, Alabama Workers’ Compensation, § 10.7, pp. 320-22 (1998).

. But see 1 Larsons Workers’ Compensation Law§ 5.01[4] (2001) (stating that "in jurisdictions adhering to the increased-risk test, the parties would do well to arm themselves with the testimony of electrical experts”).